# In the United States Court of Federal Claims

No. 13-1021 T
(Filed July 16, 2015)

```
* * * * * * * * * * * * *   *
EAGLEHAWK CARBON, INC.,     *
TWIN STAR MINING, INC.,     *
WHITE FLAME ENERGY, INC.,   *
RED RIVER COAL COMPANY,     *
INC., and USIBELLI COAL     *
MINE, INC.,                 *
                            *
              Plaintiffs,   *
                            *
      v.                    *
                            *
THE UNITED STATES,          *
                            *
              Defendant.    *
* * * * * * * * * * * * *   *
```

Tax; Interest Rate on
Overpayment, 26 U.S.C.
§ 6621(a)(1) (2012); Subchapter
S Corporations Treated as
Corporations.

*John Yates Merrell, Jr.*, McLean, VA, for plaintiffs Eaglehawk Carbon, Inc., Twin Star Mining, Inc., White Flame Energy, Inc., and Red River Coal Company, Inc. *Steven H. Becker*, New York, NY, for plaintiff Usibelli Coal Mine, Inc.

*Miranda Bureau*, United States Department of Justice Tax Division, with whom were *Caroline D. Ciraolo*, Acting Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, *Mary M. Abate*, Assistant Chief, Washington, DC, for defendant.

---

**OPINION**

---

**Bush**, *Senior Judge*.

This case is before the court on cross-motions for summary judgment filed under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The motions have been fully briefed, and oral argument was held on April 21, 2015. For the reasons stated below, defendant's motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.

## BACKGROUND

Plaintiffs are five coal mining companies which are organized as "'small business corporation[s]' under Subchapter S of the Internal Revenue Code." Compl. ¶¶ 2-6 (citing 26 U.S.C. §§ 1361-1379 (2012)). It is undisputed that these coal companies overpaid certain coal sales excise taxes and were owed refunds, plus interest, of their overpayments. The tax years in question span from 1990 through 1996. The overpayment refunds were all made in April of 2009, and the amounts of those refunds are not in dispute. Plaintiffs' claims focus instead on the interest they received on their overpayments, which, according to plaintiffs, was calculated according to a lower formula than was appropriate.

The governing statute for computing the interest owed taxpayers on their overpayments is 26 U.S.C. § 6621 (2012). If plaintiffs' interpretation of § 6621(a)(1) is correct, they should have been paid the interest rate paid to individuals, not the interest rate paid to corporations. The difference is not insignificant because plaintiffs' claims identify additional interest allegedly owed to them through 2009, which totals approximately $6 million dollars, and reference further interest which has allegedly accrued since that date.

## DISCUSSION

## I.     Standard of Review

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotations and citations omitted). The moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Tax controversies are well-suited to disposition on cross-motions for summary judgment when the outcome turns on the proper interpretation of the Internal Revenue Code (IRC or Code), rather than on disputes of fact. *See Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999) (stating that summary judgment was appropriate in that tax refund suit because issues of law were the only disputed issues before the trial court). Here, there are no material facts in dispute. To prevail on their motion for summary judgment, plaintiffs bear the burden to show that they are entitled, as a matter of law, to receive the additional interest requested in the complaint. *See, e.g.*, *Transamerica Corp. v. United States*, 902 F.2d 1540, 1543 (Fed. Cir. 1990) ("The ruling of the Commissioner of Internal Revenue enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong." (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933))).

## II.   Analysis

As a threshold matter, both parties assert that the meaning of § 6621(a)(1) is clear, although their interpretations of this statutory provision are at odds and conflicting. *See* Pls.' Reply at 1 ("[I]f anyone, it is plaintiffs who are best able to argue that a plain reading of the statute favors them."); Def.'s Mot. at 7 ("The language of § 6621(a)(1) is not ambiguous."). To determine whether a statute has a clear meaning and is unambiguous, this court examines the plain text and employs traditional tools of statutory construction. *See, e.g.*, *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1362 (Fed. Cir. 2005) (citations omitted). In this analysis, the plain text of the statute is of paramount importance. *See, e.g.*, *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998) ("Because a statute's text is Congress's final expression of its intent, if the text answers the question, that is the end of the matter.") (citations omitted).

To assist in deciphering the meaning of a statute, various tools of statutory construction may be employed. Beyond the plain text of the statute, the court may consider the structure of the statute, applicable canons of statutory construction, and legislative history. *Id.* (citations omitted). If the plain text and structure of the

statute do not decide the issue, courts often turn to canons of construction to interpret the statute. *E.g.*, *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1340 (Fed. Cir. 2008). Legislative history may also be considered in appropriate instances, even where the statutory text is plain and unambiguous. *See, e.g.*, *In re City of Houston*, 731 F.3d 1326, 1333 (Fed. Cir. 2013) (noting that even when a statute "is quite plain on its face [this] conclusion does not preclude an examination of legislative context"). To overcome the plain text of a statute, however, legislative history must clearly evidence legislative intent. *See, e.g.*, *Gardner v. Brown*, 5 F.3d 1456, 1459-60 (Fed. Cir. 1993) ("The [party relying on legislative history] must make an extraordinarily strong showing of clear legislative intent in order to convince us that Congress meant other than what it ultimately said." (citing *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed. Cir. 1990))).

A statute is ambiguous if its terms permit two conflicting but reasonable constructions. *See, e.g.*, *Rosete v. Office of Pers. Mgmt.*, 48 F.3d 514, 518-19 (Fed. Cir. 1995) (finding a statute to be ambiguous because a key term was "capable of two reasonable interpretations"). Here, however, as explained below, only the government has a reasonable interpretation of § 6621(a)(1). The court begins, as it must, with an analysis of the plain text of the statute.

### A.     The Plain Text of Section 6621(a)(1)

For the majority of the time period relevant to plaintiffs' claims, the pertinent statutory text has distinguished between individual and corporate interest rates for tax overpayments:

> **(1)   Overpayment rate**
> The overpayment rate established under this section shall be the sum of--
> > (A)  the Federal short-term rate determined under subsection (b), plus
> > (B)  3 percentage points (2 percentage points in the case of a corporation).
>
> To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment"

> for "underpayment") exceeds $10,000, subparagraph (B)
> shall be applied by substituting "0.5 percentage point"
> for "2 percentage points".

26 U.S.C. § 6621(a)(1).  Thus, the formula for calculating interest on tax overpayments generally includes the variable Federal short-term rate (STR) plus a constant, either three percentage points (for individuals), or two percentage points (for corporations).  There is also a special, reduced rate for interest on tax overpayments exceeding $10,000 which applies only to corporations, although this particular provision relies upon a separate section of the statute for clarification purposes.  Plaintiffs in this suit allege that they are subject to neither the lower (STR plus 2 percentage points) interest rate applicable to "a corporation," § 6621(a)(1)(B), nor the special reduced rate of interest (STR plus .5 percentage point) applicable to "a corporation" whose tax overpayment exceeds $10,000, § 6621(a)(1).[1]

### 1.    S Corporations are Corporations for § 6621(a)(1)(B) Interest Purposes

Taking the simpler issue first, the plain text of § 6621(a)(1)(B) singles out corporations for a lower (STR plus 2 percentage points versus STR plus 3 percentage points) interest rate on tax overpayments.  S corporations are corporations, as both a common sense interpretation of this designation and the IRC indicate.  *See* Def.'s Mot. at 7-8 (citing, among other authorities, 26 U.S.C. § 7701(a) (2012), which provides a definition for 'corporation' for use throughout the Code "where not otherwise distinctly expressed or manifestly incompatible with the intent thereof"); Oral Argument Transcript (Tr.) at 8 (Plaintiffs' Counsel) ("An S corporation is a corporation.").  Because plaintiffs are S corporations, and thus, are corporations as generally defined by the IRC, the lower (STR plus 2 percentage points) interest rate applies to their tax overpayments under $10,000

---

[1]/ The second formula, for the special reduced rate for interest on larger corporate overpayments, is contained in a portion of the statute that the parties refer to as the "flush language" of § 6621(a)(1), meaning that it is published flush with a left margin and is not indented.

during the time that § 6621(a)(1)(B) existed in its current form (1998 and later).[2]

## 2. S Corporations are Corporations for the Reduced Interest Rate for Corporate Tax Overpayments Exceeding $10,000

Section 6621(a)(1) also provides, in its flush language,[3] an even lower interest rate for corporations whose tax overpayments exceed $10,000. The court begins with the initial presentation of this special interest rate before turning to the other statutory guidance referenced in the flush language of § 6621(a)(1). As stated earlier, the statute provides that

> [t]o the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

26 U.S.C. § 6621(a)(1). This flush language text governing overpayments exceeding $10,000 establishes that the lower corporate interest rate in § 6621(a)(1)(B), *i.e.*, the STR plus 2 percentage points rate, will be reduced further when .5 percentage point replaces the 2 percentage points constant.

The cited flush language text of § 6621(a)(1) also directs the Internal Revenue Service (IRS) to borrow a definition from § 6621(c)(3), although a substitution of the word 'overpayment' for 'underpayment' must occur in order to get an accurate definition. The text of § 6621(c)(3) is reproduced here:

> **(3) Large corporate underpayment**
> For purposes of this subsection–
> **(A) In general**
> The term "large corporate underpayment"

---

[2]/ Plaintiffs present a variety of arguments challenging the plain meaning of § 6621(a)(1)(B), but these are best addressed after considering the second formula    the special interest rate for corporate tax overpayments over $10,000.

[3]/ *See supra* note 1.

> means any underpayment of a tax by a C
> corporation for any taxable period if the amount of
> such underpayment for such period exceeds
> $100,000.
>
> **(B)    Taxable period**
>
> For purposes of subparagraph (A), the term
> "taxable period" means–
>
> (i)  in the case of any tax imposed by
> subtitle A, the taxable year, or
>
> (ii)  in the case of any other tax, the
> period to which the underpayment relates.

26 U.S.C. § 6621(c)(3).  The parties disagree as to what, in particular, must be
borrowed from § 6621(c)(3) to interpret the flush language of § 6621(a)(1).  As
explained below, defendant provides the only sensible interpretation of the flush
language of § 6621(a)(1).

Stated succinctly, defendant looks to § 6621(c)(3)(B), for the definition of
the term "taxable period" in the flush language of § 6621(a)(1), whereas plaintiffs
focus upon § 6621(c)(3)(A), for the definition of the term "overpayment of tax by
a corporation for any taxable period" to apply to the flush language of
§ 6621(a)(1).  Defendant's borrowing from § 6621(c)(3) is relatively effortless –
the IRS can determine whether an overpayment of over $10,000 has occurred in
the taxable period for the corporation, which is clearly defined in § 6621(c)(3)(B)
as the taxable year for the corporation or any other tax period which may differ
depending on the tax.  Once "underpayment" had been replaced by "overpayment"
in § 6621(c)(3)(B)(ii), the definition of "taxable period" in the special interest rate
described in the flush language of § 6621(a)(1) (STR plus .5 percentage point) is
clear and any potential ambiguities as to the meaning of "taxable period" have
been eliminated.

Challenging defendant's identification of the definition which must be
borrowed from  § 6621(c)(3), plaintiffs complain that Congress should have
pointed only to § 6621(c)(3)(B), not the entirety of § 6621(c)(3), for a borrowed
definition of the term "taxable period."  *See* Pls.' Mot. at 8 ("[I]f Congress
intended to refer only to subsection (c)(3)(B) [for the definition of "taxable
period"], it would not have chosen to refer to (c)(3) in its entirety.").  The court is

7

not convinced by this argument.  First, the definition for taxable period is indeed found in § 6621(c)(3), and the statutory language directing the reader to consult § 6621(c)(3) would point the reader to the appropriate subsection of § 6621. Second, as defendant points out, only one term explicitly defined in § 6621(c)(3) is present in both the flush language of § 6621(a)(1) and § 6621(c)(3) – that term is "taxable period."  Def.'s Mot. at 11.  Third, Congress might have cited to § 6621(c)(3) generally, and not to § 6621(c)(3)(B) specifically, to address the fact that the definition of taxable period in § 6621(c)(3)(B) itself references § 6621(c)(3)(A), another part of § 6621(c)(3) which gives context for the definition of taxable period.  Defendant's correct interpretation, and indeed, the only reasonable interpretation of the flush language of § 6621(a)(1) is not controverted by the statute's reference to § 6621(c)(3), rather than a reference specifically to § 6621(c)(3)(B).

Plaintiffs face two major obstacles in their proposed borrowing from § 6621(c)(3).  First, when plaintiffs rely on § 6621(c)(3)(A), Pl.'s Mot. at 7-8, they cannot avoid the obvious discrepancy between a provision penalizing overpayments over $10,000, 26 U.S.C. § 6621(a)(1), and a rewritten § 6621(c)(3)(A) which would target, incongruously, overpayments over $100,000. If plaintiffs' approach to borrowing is followed, and the substitution of 'overpayment' for 'underpayment' occurs as required by § 6621(a)(1), § 6621(c)(3)(A) would read:

> The term "large corporate [over]payment" means any
> [over]payment of a tax by a C corporation for any
> taxable period if the amount of such [over]payment for
> such period exceeds $100,000.

26 U.S.C. § 6621(c)(3)(A).  If such a definition is inserted into § 6621(a)(1), the conflicting $10,000 and $100,000 terms become irreconcilable and render the statutory provision meaningless and unenforceable.

For this reason alone, defendant's argument as to the plain meaning of § 6621(a)(1) must prevail.  When an S corporation has overpaid its taxes for the relevant taxable period in an amount exceeding $10,000, the correct interest rate is STR plus .5 percentage point.  This formula applies to such overpayments exceeding $10,000 during the time the relevant language of § 6621(a)(1) existed

in its current form (after 1994).[4]  The court turns now to the second major obstacle to plaintiffs' proposed interpretation of the statute.

## B.    Canon of Statutory Construction

Plaintiffs' second major obstacle to their proposed borrowing from § 6621(c)(3)(A) is the rule of the last antecedent.  The disputed sentence in the statute reads:

> To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

26 U.S.C. § 6621(a)(1).  According to defendant, the parenthetical "(as defined in subsection (c)(3), applied by substituting 'overpayment' for 'underpayment')" modifies "taxable period."  Although plaintiffs do not concede the applicability of the doctrine of the last antecedent, arguing that it is overcome by other indicia of meaning, plaintiffs' analysis would have the parenthetical modify "an overpayment of tax by a corporation for any taxable period."  Pls.' Mot. at 7-8; Def.'s Mot. at 10-11.  Contrary to plaintiffs' contentions, the rule of the last antecedent, in addition to the first obstacle to plaintiffs' interpretation discussed *supra*, is determinative in this dispute.

There is not much disagreement as to how the rule of the last antecedent operates.  The meaning of a statute may be discerned using "the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."  *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (citation omitted).  Applying that rule to the flush language of § 6621(a)(1), the borrowing from § 6621(c)(3) defines "taxable period," not "corporation" and not "an overpayment of tax by a corporation for any taxable period."  This is defendant's position, and it

---

[4]/  A minor clarification of the wording of this statutory formula did not actually occur until 1997, but the basic framework for the formula was established in 1994.

is a sound one.  Although plaintiffs correctly argue that the rule of the last antecedent can be "overcome by other indicia of meaning," *Barnhart*, 540 U.S. at 26, the court finds no such indicia here, as discussed *infra*.

Plaintiffs also rely on a recent pronouncement by the United States Court of Appeals for the Federal Circuit which states that the rule of the last antecedent "provides only marginal assistance." *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008)).  This limited focus on one brief commentary on the rule of the last antecedent ignores other discussions of the rule and its usefulness in statutory construction.  *E.g.*, *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 343 (2005); *Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481, 1483 (Fed. Cir. 1997).  Indeed, the Federal Circuit has not discarded the rule since it commented in *Resource Conservation* that the rule was of "marginal assistance."  *See Energy East Corp. v. United States*, 645 F.3d 1358, 1361 (Fed. Cir. 2011) (citing *Barnhart* and construing a tax statute by applying the rule of the last antecedent).  Although the rule of the last antecedent is not always helpful in statutory construction, the court sees no need to refrain from applying the rule of the last antecedent in this case to ensure that the statutory text of § 6621(a)(1) is properly interpreted.  *See, e.g.*, *Rojas v. Attorney Gen. of U.S.*, 728 F.3d 203, 209 (3d Cir. 2013) (following the rule of the last antecedent and holding, in that case, that a parenthetical in statutory text which borrowed a definition – "(as defined in section . . . of Title . . .)" – only modified its immediate antecedent).  Because the flush language of § 6621(a)(1) employs an "as defined" parenthetical to modify the last antecedent "taxable period," defendant's grammatical construction of the statute is correct.

## C.     Legislative History

The court now considers whether the legislative history of § 6621 offers any insights into the appropriate interest to be applied to overpayments by an S corporation.  Because plaintiffs challenge two different interest rate formulas that have been applied to their overpayments, the court addresses the statutory enactments of these formulas separately.  One formula is the "STR plus 2 percentage points" formula set forth in § 6621(a)(1)(B), which differentiates between the interest rate paid individuals (STR plus 3 percentage points) and the rate paid corporations.  This corporate interest rate provision was enacted in 1998.

The other interest rate formula applies to corporate overpayments which exceed $10,000, and this formula ("STR plus .5 percentage point") in the flush language of § 6621(a)(1) was enacted in 1994. The court addresses the earlier enactment first. As a threshold matter, the record before the court shows that neither of the relevant legislative acts amending § 6621(a)(1) has legislative history which contains any direct reference to S corporations. Nor is there reference to the difference between S corporations and C corporations, or to the impact of the amendments to § 6621(a)(1) on S corporations or pass-through entities in general.[5] Thus, plaintiffs have no clear statement of congressional intent with which they might persuade the court to ignore the plain text of § 6621(a)(1).

### 1.      1994 Uruguay Round Agreements Act

Section 6621(a)(1), along with numerous other provisions of law, was amended in 1994 to implement international trade agreements established by the Uruguay Round of the General Agreement on Tariffs and Trade (GATT). *See* Uruguay Round Agreements Act, Pub. L. No. 103-465, Title VII, § 713, 108 Stat. 4809, 5001-02 (1994). It is not surprising that there is almost no commentary on this change to § 6621(a)(1), given that it was part of a massive set of statutory amendments produced through the Uruguay Round negotiations. Plaintiffs cite only one portion of a House Report section titled "Reduction in rate of interest paid on certain corporate overpayments of tax," which comments on the amendment of § 6621(a)(1):

> Distortions may result if the rates of interest in the Code differ appreciably from market rates. Reducing the overpayment rate for large corporate overpayments of taxes will reduce the possibility of distortions.

Pls.' Mot. at 9 (citing H.R. Rep. No. 103-826, pt.1, at 178 (1994) (House Report)).

---

[5] The term "pass-through entity," a term upon which plaintiffs greatly rely, refers to business entities such as partnerships which for income tax purposes are taxed largely at the individual owner level, as opposed to the entity level. *See* Pls.' Mot. App. at 3-4 (describing the income taxation of S corporations, which are treated more like partnerships than C corporations). As plaintiffs' counsel conceded at oral argument, however, this is not an income tax case but an excise tax case, where the tax was paid by the S corporations at the corporate level. Tr. at 46.

Although plaintiffs ask the court to infer that "distortions" from "large corporate overpayments" must refer exclusively to C corporations, the court sees no reason to make such a leap based on this anodyne passage of the House Report.

Moreover, plaintiffs avoid any quotation of another relevant portion of the report's commentary:

> The overpayment rate is reduced to the sum of the Federal short-term rate plus one-half percentage point for any portion of an overpayment of tax by a corporation for a taxable period that exceeds $10,000.  (The overpayment rate is the same as under present law for the first $10,000 of any overpayment of tax by a corporation.)  The provision applies to all types of taxes.

H.R. Rep. No. 103-826, pt.1, at 178.  When the entirety of the relevant legislative commentary on Section 713 is considered, there is nothing Congress has said which indicates that S corporations should be treated any differently under § 6621(a)(1) than any other type of corporation.  The legislative history is fundamentally silent on the issue before the court.

The court notes, too, that in the House Report the reference to "large corporate overpayments" is coupled with a reference to overpayments exceeding $10,000.  Plaintiffs argue that "[i]t is only logical that in decreasing overpayment rates in 1994, Congress chose to favor S corporations [again] by referencing the same subsection (c)(3) by which Congress excluded S corporations from the higher underpayment rate [for underpayments over $100,000] just four years earlier.").  Pls.' Reply at 7.  It is more logical, in the court's view, to infer that the Uruguay Round negotiations produced a tax provision which Congress implemented without regard for prior enactments of differential treatment in the Code for S corporations and C corporations.[6]  The court finds nothing in the legislative history of the 1994 amendment to § 6621(a)(1) which supports plaintiffs' interpretation of the statute.

---

[6]/ Plaintiffs have not suggested that any differences in the tax treatment of S corporations and C corporations in the IRC were discussed during the Uruguay Round negotiations.

### 2.   Internal Revenue Service Restructuring and Reform Act of 1998

In 1998, § 6621(a)(1) was amended so as to increase the interest rate on overpayments for individuals but to retain the same interest rate for corporations. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, Title III, § 3302, 112 Stat. 685, 741-42 (1998) (the IRS Reform Act). The amendment to § 6621(a)(1), which is just one among many other changes to the Code, is located within Title III of the IRS Reform Act, a group of changes to the IRC denoted "Taxpayer Protection and Rights."  IRS Reform Act, 112 Stat. at 726.  The subdivisions of Title III include such topics as "Low-Income Taxpayer Clinics," "Disclosures to Taxpayers," "Protections for Taxpayers Subject to Audit or Collection Procedures," "Relief for Innocent Spouses and for Taxpayers Unable to Manage their Financial Affairs Due to Disabilities," and "Provisions Relating to Interest and Penalties."  *Id.* at 734-76.  In this context, the fact that Congress increased the rate of interest for overpayments by individuals but did not do so for corporations appears to indicate a concern for individual taxpayers more than a concern for particular types of business entities.  Indeed, the title of this section of the IRS Reform Act is "[i]ncrease in overpayment rate payable to taxpayers *other than* corporations."  IRS Reform Act § 3302, 112 Stat. at 741 (emphasis added). Plaintiffs do not cite any passages from the legislative history of the IRS Reform Act.

The House Conference Report explaining Section 3302 of the IRS Reform Act is succinct:

> The House bill [which is the same as the Senate bill in this respect] provides that the overpayment interest rate will be [ST]R plus three percentage points, except that for corporations, the rate remains at [ST]R plus two percentage points.

H.R. Conf. Rep. No. 105-599, at 257-58 (1998).  Interestingly, in the preceding section of the IRS Reform Act – Section 3301 – the Conference Report noted that there are different interest rates which apply to various overpayments and underpayments, and in particular noted the circumstances of pass-through entities such as partnerships.  *Id.* at 257.  Obviously, Congress in 1998 was aware of pass-

through entities and could state a special concern for them, as it did in the commentary on Section 3301 of the IRS Reform Act amending 26 U.S.C. § 6621(d):

> Where interest is payable and allowable on an equivalent amount of underpayment and overpayment that is attributable to a taxpayer's interest in a pass-thru entity (e.g., a partnership), the conferees intend that the benefits of the [interest-netting] provision apply.

H.R. Conf. Rep. No. 105-599, at 257.

No such concern for pass-through entities is expressed in the Conference Report as to the application of Section 3302 of the IRS Reform Act which amended § 6621(a)(1). The Conference Report therefore contains no indication that Congress acted in 1998 to exclude S corporations from the interest rate formula applicable to corporate overpayments.[7] After a thorough review of the legislative history that might inform an alternate construction of the plain text of § 6621(a)(1), the court finds nothing to support plaintiffs' interpretation of the interest provisions which should be applied to the tax overpayments of S corporations.

### D.   Review of Plaintiffs' Principal Remaining Arguments Contesting the Plain Meaning of Section 6621(a)(1)

Having considered and rejected plaintiffs' interpretation of the plain text of § 6621(a)(1), their opposition to the applicability of the rule of the last antecedent to the flush language of § 6621(a)(1), and their misplaced reliance on the

---

[7]/  Plaintiffs also rely on a Senate committee staff report issued in 1999. Pls.' Reply at 7 n.1; Tr. at 17, 47. Defendant argues that this report is not part of the legislative history of any of the amendments to § 6621(a)(1) relevant to this suit. Def.'s Reply at 7. The court must agree with defendant. This report is not part of the legislative history explaining the 1994 and 1998 amendments to § 6621(a)(1). *See, e.g.*, *Ogilvie v. United States*, 519 U.S. 79, 90 (1996) (stating that "the view of a later Congress cannot control the interpretation of an earlier enacted statute") (citations omitted); *AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 67 Fed. Cl. 657, 685 (2005) ("Congress cannot effect an authoritative interpretation of a law passed by the prior Congress using the vehicle of a committee report.").

legislative history of § 6621(a)(1), the court now turns, briefly, to the other principal topics raised by plaintiffs in their briefs.[8]  The first argument focuses upon the nature of S corporations as "pass-through" entities; plaintiffs contend that Congress must have meant to treat S corporations more like partnerships than C corporations for the purposes of overpayment interest rates.  The second argument is that the chronology of various amendments to overpayment and underpayment interest rate provisions in the IRC must indicate that Congress granted favorable overpayment interest rate treatment for S corporations similar to the favorable underpayment interest rate provision for S corporations.  Lastly, plaintiffs urge this court to follow the United States Tax Court, in one respect but not another, in its interpretation of § 6621(a)(1) as contained in a short opinion issued in 2006.  The court addresses each of these topics in turn.

>    1.    **Whether Congress, *Sub Silentio*, Provided that S
>          Corporations Should Be Treated Like Partnerships, and
>          Not Like C Corporations, in § 6621(a)(1)**

Plaintiffs contend that pass-through entities like S corporations and partnerships, because they are so different from C corporations, must have all been excluded from any corporate overpayment interest rate set by § 6621(a)(1).  *See* Pls.' Reply at 12 ("Section 6621 conforms to the inherent differences between C and S corporations by allowing S corporations, like other pass-through entities, to pay and receive interest at the regular rates that apply to individuals.").  Plaintiffs found their contentions in this regard on "reason":

> Congress could have reasonably wanted to treat S
> corporations like partnerships, and not like C
> corporations, not because they are partnerships, but
> because the incidents of taxation in an S corporation, as
> in a partnership, fall directly upon the owners. . . .  Thus,
> there is ample reason why Congress would have wanted
> to treat interest owed by and owed to S corporations
> differently from that of C corporations and why through
> the provisions of Section 6621 it did so.

_____

[8]/  The court has considered all of plaintiffs' arguments raised in briefing and at oral argument.  None of these arguments has been persuasive.

*Id.* at 11-12.

The fundamental problem with plaintiffs' argument is that although Congress could have reasonably exempted S corporations from the corporate overpayment interest rates set by § 6621(a)(1), it has stated no such intent, either in the language of the statute or in relevant legislative history. The court cannot rewrite § 6621(a)(1) simply because it might be reasonable to do so. If plaintiffs wish to have the statute amended in their favor, they must address such concerns to Congress, not to this court. *See* Def.'s Reply at 12 ("Even if subjecting the plaintiffs to reduced overpayment interest rates were somehow unfair, the plaintiffs' argument is best directed to Congress.").

Plaintiffs also place undue reliance on a decision issued by the United States District Court for the District of New Jersey, *Naporano v. United States*, 834 F. Supp. 694 (D.N.J. 1993). Plaintiffs construe *Naporano* to hold that the word "corporation" in the Code does not always refer to S corporations:

> Applying the same reasoning invoked by the government in *Naporano* and accepted by the court, "corporation" in Section 6621 should be defined as C corporation [and excluding S corporations]. . . . It should be read as C corporation not only in the flush language of subsection (a)(1), but also in subsection (a)(1)(B).

Pls.' Reply at 14. The *Naporano* court, however, was not interpreting § 6621(a)(1), but another, entirely unrelated statute, 26 U.S.C. § 245(c)(1) (2012). 834 F. Supp. at 699. As defendant notes, there is no holding in *Naporano* which applies to every instance of the utilization of the word "corporation" in the IRC. Def.'s Reply at 9. The court finds no useful guidance in *Naporano* to determine whether S corporations should be excluded from the ambit of the term "corporation" in § 6621(a)(1). Notwithstanding the inapposite statutory analysis provided by *Naporano*, this court holds that because S corporations are corporations they are subject to the overpayment interest rates for corporations established by § 6621(a)(1). *See supra*.

> **2.    Whether Congress's Amendments to § 6621 Show an Intent to Create Parallel Advantages for S Corporations in**

## § 6621(a)(1) and § 6621(c)

Plaintiffs argue that the history of various changes to § 6621 and the fact that § 6621(c) contains different treatment of C corporations and S corporations regarding underpayment interest show that Congress could not have treated C and S corporations the same in § 6621(a)(1) for the purposes of determining overpayment interest. *See* Pls.' Mot. at 7-8, 10-11; Pls.' Reply at 3-4, 8, 10-11; Tr. at 10-14.  According to defendant, plaintiffs are asking the court to infer that the text of § 6621(a)(1) means not what it says, but instead expresses a general concern for S corporations that has been present since 1990 in § 6621(c).  Def.'s Reply at 9.  The court must agree with defendant's characterization of plaintiffs' argument, *i.e.*, a faulty premise that the intent of Congress should be inferred from the enactment of disparate legislative measures over the course of a number of years.

Such an inference, in the court's view, would ignore the likelihood that the specific legislative acts which amended § 6621(a)(1) in 1994 and 1998 had different goals than the legislation which favored S corporations in 1990. Although plaintiffs contend that such a change in concern for the tax realities of S corporations would be an "anomaly," Tr. at 13, amendments to the IRC are not constrained by the concerns of any prior Congress, particularly where, as here, different topics (overpayment interest versus underpayment interest) are addressed in successive amendments.  *See, e.g.*, *Wells Fargo & Co. v. United States*, 641 F.3d 1319, 1322-23 (Fed. Cir. 2011) (describing certain amendments to the IRC from 1981 through 2004 which adjusted statutory provisions to address the evolving concerns of Congress).

The court has considered all of plaintiffs' arguments which focus on the history of the amendments to § 6621 and which highlight the allegedly anomalous differences between the treatment of C corporations and S corporations in § 6621(a)(1) and § 6621(c), if the government's view of the statute is adopted by this court.  None of plaintiffs' arguments persuade the court that the plain text of the statute should be ignored or that a rewritten § 6621(a)(1) should override the corporate overpayment interest rate provisions clearly set forth in the text of this statute.  For these reasons, the court rejects plaintiffs' interpretation of § 6621 and its history as unpersuasive.

### 3.   Whether a Tax Court Interpretation of § 6621(a)(1) is Persuasive

"Although decisions by judges of the United States Tax Court are not binding on this court, the court gives their interpretations [of the IRC] due consideration." *RP1 Fuel Cell, LLC v. United States*, 120 Fed. Cl. 288, 345 (2015); *see also Otis Elevator Co. v. United States*, 618 F.2d 712, 719 (Ct. Cl. 1980) (noting that Tax Court decisions do not provide binding precedent for this court).  Here, plaintiffs rely, in part, on *Garwood Irrigation Co. v. Commissioner*, 126 T.C. 233 (2006).  Plaintiffs agree with the holding in *Garwood* concluding that S corporations are not included in the definition of corporation for purposes of the STR plus .5 percentage point overpayment interest rate for overpayments exceeding $10,000.  Pls.' Mot. at 9-10.  Plaintiffs disagree, however, with the holding in *Garwood* which included S corporations in the STR plus 2 percentage points interest rate formula for smaller corporate overpayments.  *Id.* at 13.

The court disagrees with the portion of *Garwood* upon which plaintiffs rely, for a number of reasons.  While the *Garwood* court found the flush language of the statute to be ambiguous, the text of § 6621(a)(1), as stated *supra*, is unambiguous and only defendant's proposed reading of the statute provides a reasonable, enforceable corporate overpayment interest rate formula for overpayments exceeding $10,000 (STR plus .5 percentage point).  Inappropriately, in this court's opinion, the *Garwood* court chose to rely on legislative history that is silent as to the treatment of S corporations.  The Tax Court discerned significance in a mere "echo[]" between language in § 6621(c), a provision enacted at an earlier date, and a similar phrase in the 1994 House Report.  126 T.C. at 235 (identifying the similarities between the phrases "large corporate underpayment" and "large corporate overpayments" as providing "some guidance").  In this court's view, the *Garwood* court discerned congressional intent where there was none.  *See supra*.

The court notes, too, that *Garwood* contains a very brief statutory analysis of the STR plus .5 percentage point provision in the flush language of § 6621(a)(1).[9]  *Garwood* therefore does not provide a sufficiently persuasive

---

[9]/  The lawsuit in *Garwood* was primarily concerned with a determination of the tax liabilities of the petitioner, not with the proper interest rate to be calculated upon any

(continued...)

analysis of this issue.  Further, *Garwood* has not been followed by any other court.  *See Maimonides Med. Ctr. v. United States*, 54 F. Supp. 3d 194, 205 n.11 (E.D.N.Y. 2014) (stating that "to the extent *Garwood* might suggest a contrary outcome, the Court declines to follow it"), *appeal docketed*, No. 14-4279 (2d Cir. Nov. 14, 2014); *see also United States v. Talley Def. Sys., Inc.*, 393 F. Supp. 2d 964, 971-72 (D. Ariz. 2005) (commenting that S corporations should be subject to the corporate overpayment rates in § 6621(a)(1)).  For all of these reasons, the court declines to follow the portion of *Garwood* upon which plaintiffs rely.

### E.    IRS Administrative Materials

Finally, the court considers whether administrative materials issued by the IRS offer any guidance for the interpretation of § 6621(a)(1).  One type of administrative material is contained in the Internal Revenue Manual (IRM).  Plaintiffs cited to provisions of the IRM as support for their interpretation of § 6621(a)(1).  Before turning to the IRM, however, the court first discusses another type of IRS administrative material that addresses the legal issue presented by this case – a program manager technical assistance memorandum issued in 1998.

### 1.    Program Manager Technical Assistance Memorandum

Although the parties did not cite to any IRS memoranda in their briefs, the court discovered one IRS memorandum potentially relevant to this dispute and requested that the parties comment on this document at oral argument.  *See* Order of April 20, 2015.  The document is labeled "Technical Assistance Memorandum" and is dated December 22, 1998.  *See* TAM CC-TAM-PMTA-00244 (Dec. 22, 1998) (hereinafter, "1998 Memorandum").[10]  Before turning to the content of this

---

[9](...continued)
overpayment.  *See Garwood Irrigation Co. v. Comm'r*, 88 T.C.M. (CCH) 173 (2004).

[10]/  The original document is available on the IRS's website, at http://www.irs.gov/pub/lanoa/pmta00244_7034.pdf (last visited July 1, 2015).  The acronym PMTA signifies "program manager technical assistance memorandum."  *E.g.*, http://www.irs.gov/pub/lanoa/pmta_2012-16.pdf (last visited July 1, 2015).  Such documents are indexed by year and are described as "Legal Advice Issued to Program Managers."  *See*

(continued...)

document, the court notes that a technical assistance memorandum occupies a low place in the hierarchy of documents released to the public by the IRS.  *See, e.g.*, Treas. Reg. § 301.6110-2(a) (stating that "a [formal] written determination [issued by the IRS] does not include for example, . . . technical assistance memoranda").

As plaintiffs pointed out at oral argument, a technical assistance memorandum is of limited utility in tax litigation.  It is undisputed that a technical assistance memorandum lacks precedential value.  *See* http://www.irs.gov/uac/Legal-Advice-Issued-to-Program-Managers (last visited July 1, 2015) (noting that program manager technical assistance memoranda "cannot be used or cited as precedent").  In this case, the only significance that should be accorded the 1998 Memorandum is that it states the legal position of the Office of Chief Counsel of the IRS regarding the interest provisions of § 6621(a)(1) as they apply to S corporations, in response to an inquiry in 1998 from the acting director of an IRS department that occupied itself with "Interest Administration."  *See Tax Analysts v. I.R.S.*, 294 F.3d 71, 81 (D.C. Cir. 2002) (noting that program manager technical assistance memoranda present the Office of Chief Counsel's "final legal position concerning the Internal Revenue Code") (emphasis removed).

For the sole purpose of illustrating the legal position taken by the IRS in 1998, the court reproduces the text of the 1998 Memorandum here.  After introducing the subject as "Overpayment Interest Rate for S Corporations," the memorandum states:

> This responds to your request for clarification of the interest rate on overpayments for S corporations under § 6621(a)(1) of the Internal Revenue Code (Code).
>
> General Overpayment Rate
>
> Section 3302 of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206,

---

[10](...continued)
http://www.irs.gov/uac/Legal-Advice-Issued-to-Program-Managers (last visited July 1, 2015).

> 112 Stat. 685, 745 (RRA 1998) amended § 6621(a)(1) of the Code to provide that for the calendar quarter beginning on January 1, 1999 and succeeding calendar quarters, the overpayment rate is the Federal short term rate plus 3 percentage points (2 percentage points in the case of a corporation).  Section 1361(a)(1) of the Code defines an "S corporation" as a small business corporation that made the election provided under § 1362(a).  Nothing in the legislative history accompanying § 3302 of RRA 1998 indicates that Congress intended to exclude S corporations from the term corporation as used in that subsection.  Accordingly, the general overpayment rate for S corporations for the calendar quarter beginning on January 1, 1999 and succeeding calendar quarters, is the Federal short term rate plus 2 percentage points.
>
> <u>Overpayments in Excess of $10,000</u>
>
> The last sentence of § 6621(a)(1) provides that to the extent that an overpayment of tax by a corporation for any taxable period exceeds $10,000, the overpayment rate is the Federal short term rate plus 0.5 percentage point.

TAM CC-TAM-PMTA-00244 (Dec. 22, 1998).  The court notes that the position taken by the Office of Chief Counsel of the IRS in 1998 is consistent with the position the government takes in this litigation in 2015.  Beyond that observation, however, the court finds no further significance in the 1998 Memorandum.

## 2.    Internal Revenue Manual

Plaintiffs rely, to some extent, on a provision of the Internal Revenue Manual (IRM) which discussed the overpayment interest due corporations under the Code, although the text cited by plaintiffs has since been replaced.  Before turning to the cited content of a historical version of the IRM, and related provisions of the IRM that plaintiffs did not cite, the court briefly examines the

weight courts typically accord provisions in the IRM.  As a threshold matter, the
IRM itself notes that its provisions are made available to the public to fulfill
certain statutory disclosure requirements, but describes the function of the IRM as
providing "instructions to staff":

> The IRM is the primary, official source of "instructions
> to staff" that relate to the administration and operation of
> the IRS.  It details the policies, delegations of authorities,
> procedures, instructions, and guidelines for daily
> operations for all IRS organizations.

IRM 1.11.2.2(1) (05-08-2014). *see also* IRM 1.11.1.3.1 (09-04-2009) (discussing
disclosure requirements as they pertain to instructions to IRS staff).

Both parties agree that the IRM binds neither the IRS nor the courts.  Pls.'
Mot. at 12; Def.'s Mot. at 16.  The only case cited by plaintiffs for the proposition
that the IRM may provide "guidance" to courts, Pls.' Mot. at 13; Pls.' Reply at 16,
is *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61 (2011).  Although criticized by
Justice Scalia in his dissent, the majority of the Court in *Ransom* defended its
citation to "guidelines" issued by the IRS by stating that "[t]he [IRS] might . . .
have something insightful and persuasive (albeit not controlling) to say about
[collection standards set forth in the IRM]."  *Ransom*, 562 U.S. at 73 n.7.  It is
noteworthy that the statute at issue in *Ransom* specifically referenced the
collection standards that are set forth in the IRM.  *Id.* at 69 (citing 11 U.S.C.
§ 707(b)(2)(A)(ii)(I) (2006 and Supp. III)).  Thus, *Ransom* is a rather unusual case
of statutory interpretation where the statute at issue specifically references the
IRM.  That is not the case here.  *Ransom* contains no general pronouncement as to
the weight that the IRM should be accorded in interpreting the Code.

Courts generally rely very little, if at all, on the IRM for guidance in
interpreting the Code.  First, it is beyond cavil that the IRM does not have the
force of law.  *E.g.*, *Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006) (citing
cases).  Second, this court, when it has cited the IRM, typically uses IRM
provisions to understand the procedural facts of a case, not as a tool of statutory
construction so as to determine money damages due a tax plaintiff.  *See*
*Adamowicz v. United States*, 101 Fed. Cl. 485, 487-88 (2011) (relying on
regulations as well as the IRM to resolve a jurisdictional challenge to a claim

against the IRS brought before this court); *Kennedy v. United States*, 95 Fed. Cl. 197, 204-05 (2010) (relying on the IRM to determine the nature of a suit brought by the government in a district court tax collection proceeding); *Sara Lee Corp. & Subsidiaries v. United States*, 29 Fed. Cl. 330, 334 (1993) (relying on the IRM to understand the nature of a "formal action" taken by the IRS against the plaintiff in that case).  Third, it is well-established that IRM provisions are not precedential and may not be used to overcome the plain meaning of a statute.  *E.g.*, *Ransom*, 562 U.S. at 73; *Electrolux Holdings, Inc. v. United States*, 71 Fed. Cl. 748, 759 (2006) (citation omitted).  Fourth, if and when courts rely on the IRM for guidance in interpreting the Code, the IRM is typically cited last, or in a footnote, showing that the IRM is not considered to carry much weight.  *See, e.g.*, *Cencast Servs., L.P. v. United States*, 729 F.3d 1352, 1363 n.5 (Fed. Cir. 2013) (citing the IRM in a footnote, after construing a Code provision, to show the weakness of the plaintiff's contrary construction of that provision).  Because neither *Ransom* nor the court's independent research have shown that the IRM carries significant weight in the interpretation of a Code provision, the court is wary of giving any substantive weight to the IRM for the purposes of construing § 6621(a)(1).[11]

The court now turns to the content of the IRM to determine whether it offers any useful "guidance" as to the interpretation of the overpayment interest provisions contained in § 6621(a)(1).  There are several provisions of the IRM which might inform the court's analysis here, but the guidance provided in these provisions is mixed, and in general these provisions support defendant's position more than plaintiffs' position.  Plaintiffs rely specifically on the 2010 version of IRM 20.2.4.9, but concede that the 2002 and 2015 versions of IRM 20.2.4.9 are not clearly supportive of their construction of § 6621(a)(1).  Defendant urges the court to ignore the IRM as having "no substantive effect in this case."  Def.'s Reply at 9 n.5 (citation omitted).  In the end, the court adopts defendant's view that the IRM provides no significant assistance for the statutory interpretation required by this case.  The following analyses will elaborate on how the court reached this determination.

---

[11]/  The United States Supreme Court has on two occasions cited to the IRM for the purposes of statutory construction, but the statutes at issue were part of the Bankruptcy Code, not the IRC.  *See Hall v. United States*, 132 S. Ct. 1882, 1889-90 (2012) (construing 11 U.S.C. § 503(b) (2012)); *Ransom*, 562 U.S. at 66-73 & nn.2, 7 (construing 11 U.S.C. § 707(b)(2)(A)).

### a.     2002 Version of IRM 20.2.4.9

Turning first to IRM 20.2.4.9, there are three different versions that discuss overpayment interest due corporations during the years pertinent to this suit.  In 2002, this IRM provision stated that "[t]he corporate overpayment interest rate is applicable to . . . Form 1120 returns."  IRM 20.2.4.9 (03-01-2002) ("Special Credit Interest Rules for Corporations").  As plaintiffs concede, this version of IRM 20.2.4.9 does not clearly indicate that S corporations, which file Form 1120S returns, are excepted from the "corporate overpayment interest rate."  *See* Pls.' Reply at 15 n.6 (stating that "[b]ecause this subsection provides that the corporate overpayment interest rate is applicable to Form 1120 Returns, it is possible to conclude that this [corporate overpayment interest rate] includes Form 1120S, the return filed by an S corporation").  The court notes that in 2002 this IRM provision also stated, more generally, that "[a] corporate overpayment interest rate is established for returns deemed to be corporations," and that "corporate filers" are not entitled to the individual overpayment interest rate.  IRM 20.2.4.9 (03-01-2002).

The court agrees with plaintiffs that the 2002 version of IRM 20.2.4.9 does not explicitly exclude S corporations from the corporate overpayment interest rates in § 6621(a)(1).  Further, the court reads this provision as a whole to target corporate filers as entities that are restricted to the corporate overpayment interest rates set forth in § 6621(a)(1).  For these reasons, the 2002 version of IRM 20.2.4.9 appears to favor defendant's position in this suit, not plaintiffs' position.

### b.     2010 Version of IRM 20.2.4.9

Plaintiffs find support, however, in a change to IRM 20.2.4.9 in 2010.  Pls.' Mot. at 11-13; Pls.' Reply at 15-16 & n.6.  This version appears to exclude S corporations from the definition of corporations which are subject to the corporate overpayment interest rates set forth in § 6621(a)(1).  The phrase upon which plaintiffs rely states that:

> A corporation is any . . . taxable entity with at least one of the following significant filing requirements:
> . . .
> Form 1120 with Doc. Code other than 16 (i.e., Form

1120S).

IRM 20.2.4.9 (09-03-2010) ("Special Credit Interest Rules for Corporations").

Although other more general pronouncements in the 2010 version of IRM 20.2.4.9 continue to indicate that corporate filers are subject to the corporate overpayment interest rates set forth in § 6621(a)(1), the specific reference to Form 1120S in the 2010 version of IRM 20.2.4.9 is a departure from the 2002 version. In the 2010 version of IRM 20.2.4.9, Form 1120S is not, apparently, considered a corporate return for the purposes of § 6621(a)(1). Because S corporations file Form 1120S returns, the 2010 version of IRM 20.2.4.9 does not indicate that S corporations should necessarily be subject to the corporate overpayment interest rates set forth in § 6621(a)(1). Thus, the 2010 version of IRM 20.2.4.9 appears to favor plaintiffs' position in this suit, not defendant's position.

### c.    2015 Version of IRM 20.2.4.9

In 2015, the IRS changed IRM 20.2.4.9 again, and the text largely reverted to the content provided in the 2002 version. The court excerpts here a few relevant pronouncements:  (1) "A corporate overpayment interest rate is established for entities deemed to be corporations."; (2) "A corporation is any . . . taxable entity with [a] significant filing requirement[] [such as] Form 1120"; and (3) "'corporate' filers are [not] allowed overpayment interest at the equalized non-corporate rate." IRM 20.2.4.9 (03-05-2015). As plaintiffs conceded at oral argument, the 2015 version of IRM 20.2.4.9 removed the language of the 2010 version upon which they relied. Tr. at 24 (Plaintiffs' Counsel) (asserting that IRM 20.2.4.9 supported plaintiffs' position "up until" March 2015). In the court's view, nothing in the 2015 version of IRM 20.2.4.9 indicates that S corporations are exempted from the lower overpayment interest rates applicable to corporations. Instead, according to this IRM provision, corporate filers, such as S corporations, appear to fall within the category of entities that are subject to the corporate overpayment interest rates set forth in § 6621(a)(1). For this reason, the court views the 2015 version of IRM 20.2.4.9 as slightly favoring defendant's interpretation of § 6621(a)(1).

### d.    IRM 20.2.4.9 Summary

The court cannot read IRM 20.2.4.9 as providing clear guidance with respect to the IRS's position on the proper interpretation of § 6621(a)(1).  The versions of this manual provision have oscillated from appearing slightly pro-defendant, to appearing slightly pro-plaintiffs, and now appear to be slightly pro-defendant again.  Even if the 2010 version of IRM 20.2.4.9 were considered to be the clearest indication of the proper treatment of S corporations, the IRS has now chosen to publish a version of this manual provision that greatly resembles the 2002 version.  Thus, were the court to accord the IRM significant weight in its construction of § 6621(a)(1), as urged by plaintiffs despite the weight of authority which counsels against such an undertaking, IRM 20.2.4.9 slightly favors defendant's position, not plaintiffs' position.  For these reasons, the court finds plaintiffs' reliance on IRM 20.2.4.9 to be unavailing.

### e.    Other IRM Provisions

The court has also examined other IRM provisions that discuss corporate overpayment interest rates and corporate filing requirements.  No extensive analysis of these provisions is required here.  The court simply notes that once an inquiry into the content of the IRM was expanded beyond the passages cited by plaintiffs, plaintiffs' arguments based on the 2010 version of IRM 20.2.4.9 are weakened and/or rebutted.

One example is IRM 20.2.4.9.1, the provision in the IRM which immediately follows the one cited by plaintiffs.  Titled "GATT Credit Interest Computations on Overpayments," this provision, in its 2002 version, stated in relevant part:

> Effective after December 31, 1994, the General Agreement on Tariffs and Trade (GATT) established a lower credit interest rate for large corporate overpayments.  The GATT rate is one and a half points below the normal corporate credit interest rate for overpayments exceeding $10,000 for all business taxpayers with a corporate filing requirement (Forms 1120, 990C, 990T).

IRM 20.2.4.9.1 (03-01-2002).  The phrase "all business taxpayers with a corporate

filing requirement (Forms 1120, 990C, 990T)," *id.*, is broad enough, in the court's view, to include S corporations which file Form 1120S returns.[12]

The court's interpretation of the phrase "all business taxpayers with a corporate filing requirement (Forms 1120, 990C, 990T)," *id.*, is informed by the current IRM's discussion of corporate filing requirements, which is found at IRM 21.7.13.7.5.2 (10-01-2008).  That provision, titled "Tax Form and Filing Requirement Descriptions for Corporations," states in relevant part that:

> (1) Entities that are incorporated with a state are also incorporated for federal tax purposes.  When an entity is incorporated, it must file the appropriate Form 1120, unless it is a non-profit/exempt organization. . . .
> . . . .
> (3) This subsection describes Form 1120 filing requirements for various types of corporations.

IRM 21.7.13.7.5.2 (10-01-2008).  Thus, the IRM specifies that incorporated entities have corporate filing requirements, which in the for-profit context means filing the "appropriate Form 1120" return and observing the "Form 1120 filing requirements for various types of corporations."  *Id.*  The IRM thus uses the term Form 1120 filing requirements broadly, to encompass several different types of Form 1120.

These "Form 1120 filing requirements," *id.*, are detailed in IRM sub-sections addressing various types of corporations; the listed types of Form 1120 returns include Form 1120, Form 1120-C, Form 1120-SF, Form 1120-H, Form 1120-IC-DISC, Form 1120-F, Form 1120-FSC, Form 1120L, Form 1120-ND, Form 1120-PC, Form 1120-POL, Form 1120-RIC, Form 1120-REIT, and Form 1120S.  *See* IRM 21.7.13.7.5.2.1 (10-01-2009) through IRM 21.7.13.7.5.2.14 (10-

---

[12]/  Unlike IRM 20.2.4.9, there was no 2010 rewrite of IRM 20.2.4.9.1.  Thus, the 2002 version of IRM 20.2.4.9.1 co-existed with the 2010 version of IRM 20.2.4.9 for approximately five years.  The fact that arguably contradictory guidance was provided IRS staff during this period further diminishes the persuasive value, if any, of the 2010 version of IRM 20.2.4.9 upon which plaintiffs rely.  The court notes, too, that the 2015 version of IRM 20.2.4.9.1, like the 2002 version, provides no support for plaintiffs' position in this suit.  *See* IRM 20.2.4.9.1 (03-05-2015).

01-2005).  As is the case for plaintiffs here, a corporation that elects to be taxed as an S corporation must file Form 1120S.  IRM 21.7.13.7.5.2.14 (10-01-2005).  Construing these IRM provisions together, IRS staff are instructed that S corporations, like other for-profit corporations, have a corporate filing requirement, and are also instructed that S corporations, for the purposes of overpayment interest, fall within the category of "all business taxpayers with a corporate filing requirement [such as Form 1120 and Form 1120S]" who receive only the lower overpayment interest rates set forth in § 6621(a)(1).  *See* IRM 20.2.4.9.1 (03-01-2002).

## f.    IRM Provisions Provide No Significant Guidance in This Case

Having reviewed a number of current and historical versions of IRM provisions which discuss corporate overpayment interest rates established by § 6621(a)(1), and corporate filing requirements, the court finds that these provisions, taken together, are generally more supportive of defendant's interpretation of the statute than plaintiffs' strained reading of the statutory text.  For the reasons stated above, however, the court does not believe that significant reliance on the IRM to interpret the Code is appropriate in most instances.  The court sees no reason to depart from that sound practice in this case.  The court has not, therefore, placed any significant weight on the instructions provided by the IRM to IRS staff for this court's analysis of § 6621(a)(1).

## CONCLUSION

Pursuant to the language of § 6621(a)(1), the corporate overpayment interest rate formulas set forth in the statute apply to S corporations as well as C corporations.  The court's reading of the statute is supported by its plain text as well as the canon of statutory construction known as the doctrine of the last antecedent.  Neither the statute's legislative history nor IRS administrative materials provide support for a contrary interpretation.  Because defendant has shown that there are no genuine issues of material fact and that the government is entitled to judgment as a matter of law, it is hereby **ORDERED** that

(1)    Plaintiffs' Motion for Summary Judgment, filed November 19, 2014, is **DENIED**;

(2)     Defendant's Cross-Motion for Summary Judgment, filed December
        22, 2014, is **GRANTED**;

(3)     The Clerk's Office is directed to **ENTER** final judgment in favor of
        defendant, **DISMISSING** the complaint with prejudice; and

(4)     No Costs.

/s/ Lynn J. Bush
LYNN J. BUSH
Senior Judge